UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:25-cv-61572-HUNT (Consent Jurisdiction)

JIMMY RODRIGUEZ, individually,
on behalf of himself and all others
similarly situated,

    Plaintiffs,
vs.

PRESTIGE INTERNATIONAL
INSURANCE GROUP, INC., a
Florida Corporation, d/b/a PRESTIGE
TRUCKING INSURANCE, INC., and
CHRISTINA L. DOWNS, individually,

    Defendants.
_____/

**JOINT MOTION FOR DISMISSAL WITH PREJUDICE
AND FOR SETTLEMENT APPROVAL**

Plaintiffs and Defendants, by and through their respective undersigned counsel, jointly move this Honorable Court for review and approval of their mediated settlement agreement and a dismissal with prejudice of this action. In support thereof, the parties state as follows:

1. On August 4, 2025, Plaintiff Jimmy Rodriguez filed a collective action complaint against Defendants for unpaid overtime under the Fair Labor Standards Act ("FLSA") and unpaid commissions, ECF No. [1].

2. Since the filing of the Complaint, eight (8) additional individuals opted in to this action as party-plaintiffs.

3. On September 10, 2025, Plaintiffs filed their Motion to Conditionally Certify Collective Action and Facilitate Notice to Similarly Situated Employees. ECF No. [24]. That motion has been fully briefed and remains pending.

4. As this Court is aware from both the Complaint and the pleadings on the motion to certify, Defendants classified Plaintiffs as independent contractors. Thus, this case involved a determination of whether Plaintiffs were employees, and if so, whether they worked overtime, how much overtime they worked, and/or whether any exemption applied, as well as whether any plaintiffs were owed unpaid commissions from their time with Defendant.

5. Prior to the filing of this action, in or about January 2025, Defendant Prestige International Insurance Group, Inc. filed a state court lawsuit against Plaintiffs Leo Boland, Nicole Kraai, Greta Irizarry and Diana Franco, and others, for breach of independent agent agreements, employment agreements, restrictive covenants, and trade secret misappropriation. *See, e.g.*, *Prestige International Insurance Group, Inc., d/b/a Prestige Trucking Insurance v. Allcom Insurance Corp., et al.*, Case No. CACE-25-000161(04), pending in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida.

6. On or about October 21, 2025, the parties attended a settlement conference which ultimately resulted in an impasse. The parties thus scheduled depositions and had commenced taking depositions thereafter.

7. Regardless, the parties continued negotiating in a good faith effort to resolve both this action and the state court lawsuit, and have negotiated a settlement of both cases.

8. Defendants deny any wrongdoing, and further deny Plaintiffs are entitled to any relief whatsoever. The Parties agree there is a bona fide, good faith dispute as to both liability and damages on Plaintiffs' claims.

9. To avoid the costs and uncertainty of further litigation, the Parties have negotiated a settlement of this matter. Under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), claims for back wages arising under the FLSA may be settled or compromised with

either the approval of the district court or under the supervision of the U.S. Department of Labor. The Parties request that the Court review and approve their settlement and dismiss this action with prejudice. The Parties further request that the Court reserve jurisdiction to enforce the terms of the settlement, should such enforcement be necessary.

10. All Parties are represented by counsel in this action, and all agree and stipulate that the settlement represents a fair, reasonable, good faith, and arms-length settlement of Plaintiffs' claims. As a result, Plaintiffs and Defendants have agreed to a resolution of all claims in this matter.

11. There were significant differences in the parties' positions in this action which resulted in the settlement. Specifically, Plaintiffs alleged they were misclassified as independent contractors and owed unpaid overtime and unpaid commissions. On the other hand, Defendants' alleged they were properly classified as contractors and that even if they were employees, they did not work the amount of hours alleged. Given the expansive differences in positions, the parties negotiated a substantial settlement that will provide Plaintiffs with payment for their alleged unpaid wages. A trial would also prove extremely costly with no guarantee of result.

12. Further, as set forth above, Prestige has pursued its own claims and filed its own lawsuit against several of the named-Plaintiffs and threatened to file additional lawsuits against other Plaintiffs to enforce a restrictive covenant. While Plaintiffs dispute the validity of same, the parties' settlement agreement provides for a dismissal with prejudice and general release of the state court lawsuit.

13. The parties engaged in informal discovery and conferred on multiple occasions to exchange and obtain informal information concerning Plaintiffs' claims and Defendants' defenses.

14. Since the inception of this case, the parties and their counsel informally explored potential resolution of not just the FLSA claims, but Defendants' alleged claims against the Plaintiffs, as part of a "global" resolution of all claims.

15. The settlement obligates Defendants to pay Plaintiffs non-wage compensatory damages that was calculated based upon amounts alleged to be owed for unpaid overtime and liquidated damages. The payments to Plaintiffs are categorized as non-wage compensatory damages due, in part, to the fact that Plaintiffs had been classified as contractors and had never received a payroll style check or W2 from Prestige. Again, one of the issues in the case was whether Plaintiffs were correctly characterized as 1099 independent contractors, but rather than litigate, the parties determined to settle the case. Thus, the Plaintiffs' proceeds are designated as non-wage compensatory damages (and again, also due to the fact that several Plaintiffs also received reimbursement for out-of-pocket expenses for fees and costs incurred in the state court actions). Defendants will issue 1099s to Plaintiffs for these monies. The Agreement confirms as much.

16. In addition, Plaintiffs' counsels separately allocated and negotiated the claim for reasonable attorney's fees and costs. While Plaintiffs retained their counsel on a contingent fee basis, under the terms of the settlement, Plaintiffs will retain 100% of their settlement proceeds and Defendants will pay the Plaintiffs' counsel a separate amount for negotiated attorneys' fees and costs.

17. In addition, the agreement includes a full *mutual* general release, which, for the Plaintiffs, adds significant value to the settlement, separate and apart from any monetary terms, as there were actual, and not theoretical claims, at issue here (separate and apart from the FLSA

4

claims). Further, the settlement agreement provides for a release of the Plaintiffs' broad restrictive covenants in their agreements with Prestige.

18. In exchange for the settlement proceeds and these additional negotiated terms, Plaintiffs agreed to dismiss the claims brought in this action with prejudice and Prestige agreed to dismiss the state court lawsuit with prejudice. The parties stipulate that they have a bona fide dispute and are resolving the matter to avoid the cost and time of litigating the issues and the risks associated with continued litigation. Counsel for the parties represent the settlement entered by the parties was an arms-length compromise and there was no collusion regarding the settlement of this matter. Indeed, this was a mediated settlement.

19. Counsel for the parties also represent the continuation of this litigation would necessitate further expense causing additional expenditures of costs and attorney's fees.

20. Counsel for the parties agree, in their respective opinions, the settlement is fair and reasonable under the circumstances.

21. Counsel for the parties agree and acknowledge the amount negotiated as attorney's fees and costs is reasonable and was negotiated separately from the amount that was agreed upon for Plaintiffs' underlying claims for overtime. The fees also include time spent litigating and negotiating the claims Prestige had asserted against certain Plaintiffs, culminating in the mutual general release term of the settlement. Plaintiffs' counsel also negotiated a consent judgment against Defendants, jointly and severally, in the event of a payment default as the payment of the settlement proceeds includes installment terms.

22. Given the issues, the risks present for both sides, the total value and benefit obtained by the Plaintiffs, and the parties' desire to achieve a global resolution of all potential claims that could have arisen out of the working relationship between the parties, including the resolution of

the FLSA claims at issue here, the parties believe the settlement is fair and reasonable under the circumstances and accordingly request this Court to approve their global settlement. The parties respectfully request the Court review and approve the settlement as fair and reasonable, and stipulate to the dismissal of this action with prejudice. The parties agree to the dismissal of this action with prejudice and request the Court retains jurisdiction solely to enforce the terms of the settlement agreement. *See Anago Franchising, Inc. v. Shaz, LLC,* 677 F.3d 1272, 1280 (11th Cir. 2012).

## MEMORANDUM OF LAW

**Standard of Review**

Judicial review and approval of portions of this settlement is necessary to give it final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food Stores*:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id.* at 1352-53.

"Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required." *Feagans v. Americana Jax Inv., Inc.,* 3:07-cv-433-J-33HTS, 2008 U.S. Dist. LEXIS 21974, 2008 WL 782488, at *1 (M.D. Fla. Mar. 20, 2008); *see also, Mackenzie v. Kindred Hosps. E., LLC.,* 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) ("Since the plaintiff has been offered full compensation on his claim, this case does not involve a compromise. There is no need for [*4] judicial scrutiny. . ..."). Even so, in an abundance

6

of caution, the Parties are submitting the settlement even though there has been no compromise of the unliquidated amounts sought (albeit requesting the Court review same *in camera* or at a fairness hearing).

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

(1) the existence of fraud or collusion behind the settlement:

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3 (M.D. Fla. Jan. 8, 2007). S*ee also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498 at *6 (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enter., Inc.,* No. 6:05-cv-1247-Orl-JGG, 2006 U.S. Dist. LEXIS 22066 at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a fair settlement. *Hamilton*, 2007 U.S. Dist. LEXIS at *2-3. *See also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

### A. All Relevant Criteria Support Final Approval of the Settlement.

First, courts have found no fraud or collusion where both parties were represented by counsel and the amount paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *11-12 (M.D. Fla. Dec. 21, 2006). Here, the Parties were independently represented by counsel.

All counsel involved have extensive experience in litigating claims under the Fair Labor Standards Act, including collective action claims for unpaid overtime and minimum wages. Each counsel was obligated to and did vigorously advocate for their clients.

The complexity, expense, and length of future litigation also militate in favor of this settlement. If the parties continued litigating this matter, they would be forced to engage in costly and protracted litigation to prove their claims and defenses.

However, to resolve the litigation, Defendants are paying Plaintiffs for alleged unpaid overtime, with liquidated damages, costs, and attorneys' fees, along with a negotiated full general release. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

Third, there has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The parties exchanged information and documentation regarding Plaintiffs' hours and pay, including commissions, and other related information. In agreeing upon the proposed settlement, the parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

The last element the Court should evaluate in determining the fairness of the settlement is the reasonableness of the attorneys' fees. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-

Orl-22JGG, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). In determining the reasonableness of attorneys' fees, the lodestar is recognized as a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Helms* at 5. Courts have held, however, that it is unnecessary to inquire into the reasonableness of the hourly rate charged by plaintiff's counsel where both parties stipulate as to the reasonableness of the attorney's fees. *Id.* at 12.

Here, the parties agree the amount negotiated and agreed upon as attorney's fees and costs is reasonable based on the time spent by Plaintiffs' counsel in prosecuting and resolving the Plaintiffs' claims, the risk involved, and the total settlement value and benefit obtained by Plaintiffs. The parties negotiated the fees separately from the Plaintiffs' settlement payment and the fees were not negotiated in relation to or as a portion of Plaintiffs' recovery. *See Bonetti v. Embarq Management Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Therefore, both parties request this Court find the proposed attorneys' fees reasonable.

## CONCLUSION

The settlement terms are fair, reasonable, and adequate and the parties' interest in maintaining confidentiality of the settlement outweighs the public's interest in the matter. Accordingly, the parties respectfully request the Court review the agreement, grant this Joint Motion for Approval of the Settlement and enter a Final Order of Dismissal with prejudice in this action, reserving jurisdiction only to enforce the terms of the settlement. The parties request that this Court conduct a fairness hearing to approve the agreement or permit counsel to email a copy of the settlement agreement for an *in camera* inspection.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order approving the Parties' settlement, dismissing this action with prejudice, and reserving jurisdiction to enforce the terms of the settlement, should such enforcement be necessary. A proposed order is provided herewith.

Respectfully submitted on December 18, 2025.

| | |
|---|---|
| **Robin I. Frank** | **Donald J. Thomas** |
| DANIEL R. LEVINE, ESQ. | DONALD J. THOMAS, ESQ. |
| Florida Bar No. 0057861 | Florida Bar No. 834599 |
| E-Mail:  DRL@PBL-Law.com | E-Mail: don@cbrlawgroup.com |
| ROBIN I. FRANK, ESQ. | CBR Law Group, LLLP |
| Florida Bar No. 0649619 | Fifth Avenue Place |
| E-Mail:  RIF@PBL-Law.com | 55 NE 5th Avenue, Suite 503 |
| PADULA BENNARDO LEVINE, LLP | Boca Raton, FL 33432 |
| 3837 NW Boca Raton Blvd., Suite 200 | Telephone: (561) 509-1515 |
| Boca Raton, FL   33431 | Attorneys for Defendants |
| Telephone:    (561) 544-8900 | |
| Counsel for Plaintiffs | |